IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID K. LORD, )<br>    Plaintiff ) <br> ) <br> vs. ) <br> ) <br> ERIE COUNTY, et al., ) <br>    Defendants. ) | C.A.No. 08-213Erie <br> District Judge McLaughlin <br> Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Erie County [Document # 16] be granted in part and denied in part. The motion to dismiss should be granted as to the procedural due process claim and the breach of contract claim, while the motion to dismiss should be denied as to the remainder of the § 1983 claims.

A Case Management Conference will be scheduled by separate order.

**II.   REPORT**

    **A.   Relevant Procedural History**

On July 25, 2008, this case was removed from the Court of Common Pleas of Erie County. Plaintiff alleges that Defendant Erie County[1] has violated his constitutional rights

---

[1] Originally named as Defendants to the state court action were: Erie County, James Veshecco, James Senyo and Vincent Kinnane. Following pre-complaint discovery in the state

1

under the First, Fifth and Fourteenth Amendments to the U.S. Constitution and has breached his implied employment contract.

Plaintiff claims that his employment as a Training Coordinator in the Erie County Department of Corrections was terminated on August 27, 2007, for violations of the anti-fraternization policy of the Department of Corrections Standards of Conduct and Code of Ethics.  Document # 1-1.  The anti-fraternization policy states:

> 27.  Fraternization with Inmates
>
> a.   Employees shall not develop a personal relationship with inmates during or for at least one year after, the inmate's incarceration (Examples of personal relationships include romance, co-habitation, business dealings or the provision of legal assistance.).
>
> b.   Fraternization exposes the employee, other staff, inmates and the public to increased risks of security compromise or danger at the prison and in the community.

Id. at ¶ 6.  Plaintiff acknowledges that he maintained a personal relationship with former inmate Teo Underhill, who was under the supervision of the Erie County Adult Probation Department at the time of the termination of Plaintiff's employment.  Id. at ¶ 7.

At Count I of the Complaint, Plaintiff argues that: 1) the anti-fraternization policy is unconstitutional (id. at ¶ 9); 2) the termination of his employment based upon a violation of the anti-fraternization policy violates his constitutional rights under the First and Fifth Amendments (id. at ¶ 10); and 3) the termination of his employment violates his procedural due process rights under the Fourteenth Amendment (id. at ¶ 11).  At Count II of the Complaint, Plaintiff alleges

---

court action, Plaintiff determined that he has no viable claims against the individual Defendants and Plaintiff voluntarily withdrew his claims against the individual Defendants.  See Document # 7, page 2.

that Defendant Erie County breached an implied contract of employment with him.  Id. at Count II.  As relief, Plaintiff seeks:

> - a declaration that the anti-fraternization policy is unconstitutional;
>
> - a declaration that the application of the anti-fraternization policy to him resulting in the termination of his employment violated his constitutional rights to freedom of association and privacy;
>
> - a declaration that in terminating Plaintiff without adequate notice and an opportunity to prepare and respond to the allegations against him, Erie County deprived Plaintiff of his job without due process of law; and
>
> - reinstatement to his former position, and monetary damages in excess of thirty thousand dollars, including back pay, front pay and restoration of benefits.

Id.

Presently pending before this Court is Defendant Erie County's motion to dismiss.  Document # 16.  Plaintiff has filed a brief in opposition to the pending dispositive motion.  Document # 18.  The issues are ripe for disposition by this Court.


**B.     Standard of Review** - **Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 95 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

3

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal**

> conclusions. **Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210-11(3d Cir. 2009).

### C.     Count I - the § 1983 Claims

At Count I of the Complaint, Plaintiff makes three distinct claims: 1) that Erie County's anti-fraternization policy is unconstitutional (id. at ¶ 9); 2) that the termination of his employment violated his rights to privacy and freedom of association under the First and Fifth Amendments (id. at ¶ 10); and 3) that the termination of his employment violated his procedural due process rights under the Fourteenth Amendment (id. at ¶ 11).

#### 1)     Constitutionality of the Anti-Fraternization Policy

A municipality or county will generally not be held liable under §1983 unless the plaintiff establishes that the challenged conduct was a result of a government entity's official policy, custom or practice. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Merely alleging that a municipality has "engaged in a policy, custom, and practice" that violated plaintiff's federal rights is precisely the formulaic recitation of legal elements that the Supreme Court determined was insufficient in defeating a motion to dismiss. See generally, Miller v. North Belle Vernon Borough, 2009 WL 112854 (W.D.Pa., Jan. 15, 2009). While a plaintiff

need not plead detailed facts regarding the alleged policy, custom, or practice, he must, in the very least, plead facts that: (1) put Defendants on notice with regard to the basis for the alleged policy, custom, or practice; and (2) "show" that he is entitled to relief as a result of that policy, custom, or practice. See Twombly, 550 U.S. at ___, 127 S.Ct. at 1964.  Here, Plaintiff's complaint meets the threshold inquiry of *Monell* as he has adequately identified an official policy of Erie County that allegedly violates his constitutional rights to privacy and freedom of association.

As an initial matter, the court must make a threshold determination of the appropriate standard of review it will apply to the challenged policy. Generally, the level of scrutiny to which a challenged restriction or policy is subject is dependent upon the nature of the right implicated.  Under this traditional framework, strict scrutiny is required when the legislative classification impermissibly interferes with the exercise of a fundamental right. In order for an infringement to pass constitutional muster under strict scrutiny, the government must demonstrate that the infringement is necessary to promote a compelling state interest and is narrowly tailored to meet that end.  Saenz v. Roe, 526 U.S. 489, 504 (1999).[2]  All remaining classifications, as well as restrictions on non-fundamental rights, are subject to the highly deferential rational basis test.  For a restriction to pass constitutional muster under rational basis scrutiny, it must only be rationally related to a legitimate state interest.   Kimel v. Florida Board of Regents, 528 U.S. 62 (2000).

---

[2]  Certain quasi-suspect classifications, such as gender and illegitimacy, are subject to an intermediate form of scrutiny under equal protection principles and will be upheld if they are substantially related to a sufficiently important governmental interest.  United States v. Virginia, 518 U.S. 515, 533 (1996); Mississippi University for Women v. Hogan, 458 U.S. 718 (1982); Craig v. Boren, 429 U.S. 190 (1976).

Here, Defendant argues that instead of using the traditional framework to assess the constitutionality of the anti-fraternization policy, this Court should utilize the more deferential *Turner v. Safley* standard. The *Turner* analysis focuses on the overall reasonableness of a constitutional infringement that is applied to inmates and "accord[s] great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton v. Rasheed, 2003 WL 1354099, at * 11 (3d Cir. 2003) quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987).

In Turner, the Supreme Court declared that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.[3] The *Turner v. Safley* reasonableness analysis focuses on four factors: 1) whether there is a legitimate rational connection between the prison regulation and the governmental interest; 2) whether the prisoners have alternative means of exercising the constitutional right at hand; 3) the impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and 4) the availability of alternatives to the regulation. 482 U.S. at 89-90.[4]

---

[3] The Turner Court reasoned that: "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand." 482 U.S. at 89.

[4] "Although the factors are intended to serve as guides to a single reasonableness standard, 'the first factor looms especially large' because it 'tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions.'" Waterman v. Farmer, 183 F.3d 208, 213-14 (3d Cir. 1999) quoting Amatel v. Reno, 156 F.3d 192, 196 (D.C. Cir. 1998). The first *Turner* factor considers the relationship between the policy and the penological

It is not obvious that *Turner* is the appropriate standard under which to evaluate the constitutionality of Erie County Prison's anti-fraternization policy, a policy which applies only to prison staff. The Supreme Court's *Turner* standard was specifically created as an alternative to the traditional framework for situations in which "a prison regulation impinges on **inmates'** constitutional rights." Turner, 482 U.S. at 89 (emphasis added).[5][6] However, even if *Turner* is

---

interest. This factor requires a two-fold analysis: "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." Sutton, 2003 WL 1354099, at * 11 quoting Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989). "The first factor is 'foremost in the sense that a rational connection is a threshold requirement - if the connection is arbitrary or irrational, the regulation fails, irrespective of whether the other factors tilt in its favor. But, ... we do not view it as subsuming the rest of the inquiry." Id. quoting Wolf v. Reno, 297 F.3d at 310. However, in a more recent case, the Third Circuit characterized the *Turner* test as a "two-step" process: first, "determining whether there is a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it", then, "if this rational connection exists" the court should go on to "consider (the) three other factors in a second-step analysis." Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir. 2009).

[5] In support of its advocation of the *Turner* standard, Defendant cites Lape v. Commonwealth of Pennsylvania, 157 Fed. Appx. 491 (3d Cir. 2005) (unpublished). In Lape, a former prison employee challenged the termination of her employment after she married a former inmate in violation of an anti-fraternization policy. In applying the *Turner* analysis to a non-prisoner, the Third Circuit depended on the fact that Plaintiff had received outgoing correspondence from an inmate in violation of a prison policy restricting the rights of prisoners. Id. at 498 ("Because Anderson was terminated for violating the anti-fraternization rule set out in Section B-6 of the Code of Ethics, we have considered whether that rule violated her associational rights to marry and to maintain certain intimate human relationships. [...] Although Anderson is not an inmate and her claim might arguably be subject to review in accordance with Procunier v. Martinez, 416 U.S. 396, 409 (1974), because she received outgoing correspondence, we will [...] apply the *Turner v. Safley* standard.").

[6] When presented with a similar constitutional challenge, a Delaware district court opined: "The court is not persuaded that the *Turner* standard is the appropriate standard of review to apply in this case. The *Turner* standard of review is applied when an inmate's constitutional rights are implicated. In this case, however, the constitutional rights being advanced by Plaintiff are not those of an incarcerated individual, but those of a correctional officer, a state government employee." Via v. Taylor, 224 F.Supp.2d 753, 763-64 (D.Del.2002).

the appropriate standard of review under which to analyze the constitutionality of the policy here, this Court need not conduct that inquiry today at this stage of the proceedings. Although Defendant claims that maintaining the security of the institution is the goal of the anti-fraternization policy (*Turner's* first prong), Defendant has not provided any evidence in support of this argument.[7]

Under the deferential *Turner* standard, this Court can not make a "common sensical" judgment as to the constitutionality of a policy. See Wolf v. Reno, 297 F.3d 305, 308 (3d Cir. 2002). "While the ultimate burden of persuasion with regard to the reasonableness of a regulation resides with those challenging it, the defendant administrators must put forward the legitimate governmental interest alleged to justify the regulation, and demonstrate that the policy drafters could rationally have seen a connection between the policy and that interest." Id. at 308 quoting Overton v. Bazzetta, 539 U.S. 126, 133 (2003) and Turner, 482 U.S. at 89. When conducting a *Turner* analysis, a district court must "describe the interest served, consider whether the connection between the policy and the interest served is obvious or attenuated – and, thus, to what extent some foundation or evidentiary showing is necessary – and, in light of this determination, evaluate what the government has offered." Ramirez v. Pugh, 379 F.3d 122, 128 (3 Cir. 2004). See also Warren v. Commonwealth of Pennsylvania, 316 Fed. Appx. 109,

---

The district court then analyzed the challenged policy under both the traditional framework and the *Turner* standard finding that the challenged policy failed under both standards on the facts of that case.

[7] Defendant argues that the policy "reflects the penological perspective that fraternization with inmates and recently-released inmates creates an increased risk of security compromise and danger at the prison and in the community and, thus, deference should be given to that professional judgment." Document # 17, page 6.

115 (3d Cir. 2008) ("We acknowledge the legitimacy of Defendants' interest in promoting prison safety and security. [... But] because of Defendants' less than thorough briefing and [Plaintiff's] unfocused arguments, the record is not developed enough for us [...] to engage in the *Turner* analysis at present.").

Here, Defendant has offered no evidence with which this Court could conduct a *Turner* analysis.  Accordingly, the motion to dismiss should be denied.  However, the issue of the constitutionality of the anti-fraternization policy may be revisited on a motion for summary judgment with a more fully developed record.

### 2)      Termination of Plaintiff's Employment - First and Fifth Amendments - right to privacy and freedom of association

Next, Plaintiff claims that Erie County's termination of his employment based upon his violation of the anti-fraternization policy violated his constitutional rights to privacy and freedom of association under the First and Fifth Amendments.  Document # 1, ¶ 10.  Defendant moves to dismiss for failure to state a claim.

It has long been recognized that facial challenges and "as-applied" challenges are separate and distinct.  See The Nationalist Movement v. City of York, 481 F.3d 178 (3d Cir. 2007); County Concrete Corp. v. Town of Roxbury, 442 F.3d 159 (3d Cir. 2006); Bass v. Butler, 116 Fed. Appx. 376 (3d Cir. 2004); Lopez v. City of Oil City, 2008 WL 906521, at *2 n.1 (W.D.Pa., 2008).[8]  Although an "as-applied" challenge is distinct from a facial challenge,

---

[8] "If a statute is unconstitutional as applied, the government may continue to enforce the statute in different circumstances under which it is not unconstitutional.  If a statute is

the same analytical framework is used to determine the constitutionality of the challenged action. As discussed above, the standard to be applied here is not entirely clear. Even assuming that the more relaxed *Turner* test is the appropriate standard, this Court cannot conduct such an analysis without any evidence. See Wolf, 297 F.3d 305.

Accordingly, the motion to dismiss should be denied. This issue may be revisited on a more fully developed factual record.

### 3)    Termination of Plaintiff's Employment - Fourteenth Amendment procedural due process violation

Next, Plaintiff alleges that the termination of his employment violated his constitutional right to procedural due process. Defendant moves for the dismissal of this claim on the basis that Plaintiff has no right to the protections of procedural due process in the context of his continued employment with Erie County.

"Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right

---

unconstitutional on its face, the government may not enforce the statute under any circumstances. A challenger's argument in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, the challenger contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. Therefore, the constitutional inquiry in an as-applied challenge is limited to the challenger's particular situation." United States v. Extreme Associates, Inc., 352 F.Supp.2d 578, 591 (W.D. Pa. 2005), reversed on other grounds, 431 F.3d. 150 (3d Cir. 2005) (internal quotation omitted).

11

to notice and a hearing, before the government can deprive an individual of a liberty or property interest.

To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property interest. Daniels v. Williams, 474 U.S. 327, 339 (1986).[9]  To have a protected property interest, a plaintiff must show that he has a legitimate entitlement to continued employment. Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) citing Board of Regents of State College v. Roth, 408 U.S. 564, 577 (1972). Whether an employee has a legitimate entitlement to, and hence a property interest in, his government job is a question answered by state law. Bartal v. Borough of Laureldale, 515 F.Supp.2d 556, 561 (E.D. Pa. 2007).  In Pennsylvania, an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer. Chabal v. Reagan, 841 F.2d 1216, 1223 (3d Cir. 1988).  "Employment in Pennsylvania, including government employment, is generally at-will unless otherwise provided by contract or statute." Grabiak v. Pennsylvania State Police, 276 Fed.Appx. 210, 212 (3d Cir. 2008) citing Pipkin v. Pennsylvania State Police, 693 A.2d 190, 191 (Pa. 1997). See also Cooley v. Philadelphia Housing Financial Agency, 830 F.2d 469, 471 (3d Cir. 1997) ("Absent a showing that state law

---

[9] If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded by the Due Process Clause.  If a protected interest is found, the next step in the due process inquiry is to determine what process is due.  "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471,  481 (1972).  At a minimum, due process requires notice and the opportunity to be heard. Paul v. Davis, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

has created a legitimate expectation of continued employment, a public employee is presumed to be an at-will employee.").

Here, Plaintiff cites to no contract or statute in support of his due process claim. Instead, Plaintiff argues that Erie County's employment policies provided him with a legitimate expectation of continued employment sufficient to overcome the presumption of at- will employment because there is "evidence of an implicit agreement between Plaintiff and Erie County that he would be removed from his employment only for the reasons and in the manner set forth therein." Document # 18, page. 15. In support of this argument, Plaintiff offers the Erie County Department of Corrections Employee Disciplinary Procedure and the Erie County Government Employee Handbook[10]. Plaintiff claims these policies[11] go beyond the obligations imposed on a Pennsylvania employer by law and create a legitimate expectation of continued employment, and accordingly a property interest, and a right to procedural due process.

---

[10] These documents are attached as exhibits to Plaintiff's complaint. However, the use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. See Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment.").

[11] The Handbook itself indicates that it does not constitute a contract and sets forth the disciplinary action that will result for an employee's failure to fulfill his professional responsibilities. The Handbook provides that "a non-bargaining employee wishing to appeal a disciplinary action ... may do so in accordance with the procedures outlined in the Personnel Code." The Personnel Code referred to in the Employee Handbook provides that disciplinary actions "consist of four categories: counseling, warning, suspension and discharge" to "be administered in that order" but that "depending on the seriousness of the infraction, that order may be altered." The Code further provides that generally "at least two days prior to the proposed effective date of a disciplinary action," the disciplined employee will receive "a written explanation of the disciplinary action." See Exhibits attached to Complaint.

Here, Plaintiff is mistaken. Under Pennsylvania law, an implied contract is not enough to give rise to a property interest in continued employment. Hess v. County of Lehigh, 2009 WL 2461734, at * 1 (E.D. Pa.) quoting Sanquingi v. Pittsburgh Board of Public Education, 967 F.2d 393, 401 (3d Cir. 1992) ("Only two types of contract have been found to be property protected by the Fourteenth Amendment. The first is a contract that confers a protected status, such as a tenure contract providing for permanent employment. The second is a contract explicitly providing that it may be terminated only for cause."); Pyles v. City of Philadelphia, 2006 WL 3613797, at *6 (E.D. Pa.) ("The policy statements relied upon by plaintiff do not demonstrates that plaintiff had more than a unilateral expectation of continued employment. Because plaintiff cannot establish a legally cognizable property interest in her employment, she cannot support her procedural due process claim."); Hillegass v. Borough of Emmaus, 2003 WL 21464578, at *6 (E.D. Pa.) ("Although the Borough's Personnel Policy required the Borough Council to provide Borough employees with advanced notice of disciplinary action, these provisions do not create a property interest in public employment or guarantee that the Borough Council abide by these procedures.").

The motion to dismiss should be granted as to the procedural due process claim as Plaintiff has failed to establish a property interest (and a corresponding right to procedural due process) in his continued employment.

### D.    Count II - Breach of Contract Claim

As referenced above, Pennsylvania law presumes that all employment is at-will employment. Dibonaventura v. Consolidated Rail Corp., 539 A.2d 865, 867 (Pa.Super.Ct.1988). In Pennsylvania "as a general rule, there is no common law cause of action

14

against an employer for termination of an at-will employment relationship. Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (1997). However, the presumption of at-will employment may be overcome if a party can establish one of the following:

       1)      an agreement for a definite duration;

       2)      an agreement specifying that the employee will be discharged for just cause only;

       3)      sufficient additional consideration; or

       4)      an applicable recognized public policy exception.

Id. at 214.

Plaintiff has not attempted to rebut the at-will presumption in any these enumerated ways. Instead, Plaintiff argues generally that the Erie County Department of Corrections Employee Disciplinary Procedure and the Erie County Government Employee Handbook create an implied contract. Plaintiff's general arguments are not enough to overcome the at-will presumption. Plaintiff has failed to state a breach of contract claim under state law and therefore, the motion to dismiss should be granted as to this claim.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended the motion to dismiss filed by Defendant Erie County [Document # 16] be granted in part and denied in part. The motion to dismiss should be granted as to the procedural due process claim and the breach of contract claim, while the motion to dismiss should be denied as to the remainder of the § 1983 claim.

A Case Management Conference will be scheduled by separate order.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


        S/Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        UNITED STATES MAGISTRATE JUDGE


Dated: November 30, 2009