# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID K. LORD,)
)
      Plaintiff,)    Case No. 1:08-cv-213-SJM-SPB
)
v.)
)
ERIE COUNTY, *et al.*,)
)
      Defendants.)

## MEMORANDUM JUDGMENT ORDER

McLAUGHILIN, SEAN J., District J.,

    In this civil action, Plaintiff David K. Lord has sued the County of Erie under 42 U.S.C. §1983, claiming that his federal constitutional rights were violated when he was terminated from his employment as a Training Coordinator in the County's Department of Corrections ("DOC"). While so employed, Lord associated with an individual by the name of Teo Underhill while Underhill was serving a county probationary sentence. The prison warden concluded that this association constituted a violation of the DOC's anti-fraternization policy and informed Lord that he could either resign or be fired. Lord refused to resign and was terminated from his job. He later filed this lawsuit in the Erie County Court of Common Pleas.

    Upon removal of the case to this Court,[1] the matter was referred to United States Magistrate Judge Susan Paradise Baxter for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates. The Magistrate Judge's Report and Recommendation [46], entered on June 30, 2011, recommends that the Defendant's motion for summary judgment [36], which is presently pending before the Court, be denied. The County filed

---

[1] Our jurisdiction is premised upon 28 U.S.C. § 1331 and 1343(a).

its objections [48] on July 14, 2011, and Plaintiff filed his response to the objections [49] on July 28. For the reasons set forth below, this Court declines to adopt the Magistrate Judge's report and recommendation and will instead enter summary judgment in favor of the County.

## I. BACKGROUND

The following undisputed facts are gleaned from the Magistrate Judge's Report and Recommendation. At various times between 1997 and 2007, Lord worked within the Erie County DOC at the Erie County Prison. Also employed at the Prison, at all times relevant to this case, was Warden James Veshecco, Deputy Warden James Senyo, Deputy Warden Vincent Kinnane, and Officer Scott Gorring.

In 2005, Lord met Underhill and the two moved into an apartment together shortly thereafter. On January 1, 2006, while the two were sharing an apartment, Underhill was arrested. He was later released into Lord's custody pending trial. Following a jury trial, Underhill was found guilty of misdemeanor simple assault and summary disorderly conduct. He was sentenced to 48 hours in the Erie County Prison and 21 months of probation.

After Underhill served his term of incarceration, but while he was still on probation, he and Lord communicated by telephone and in person. Lord was aware that Underhill was on probation, and he spoke with two superiors at the Erie County Prison concerning his relationship with Underhill. Both Veshecco and Senyo instructed Lord to avoid Underhill. However, Lord continued to associate with Underhill much as he had been doing before.

In August of 2007, Officer Gorring observed Lord and Underhill together in a local bar. Gorring later saw the two leave the bar in the same vehicle. Gorring prepared a report detailing his observations and submitted it to Veshecco.

That same month, Lord met with Veshecco, Senyo, and Kinnane to discuss Lord's continued association with Underhill. After Lord confirmed that the contents of Gorring's report were true, Veshecco offered Lord the opportunity to resign. When Lord refused, he was terminated.

Lord contends (and for present purposes we will assume it is true) that he was terminated for violating Paragraph 27 of the DOC's "Standards of Conduct and Code of Ethics," (informally referred to herein as the "anti-fraternization policy"). In relevant part, that policy provides:

> 27. Fraternization with Inmates
>
> a. Employees shall not develop a personal relationship with inmates during or for at least one year after, the inmate's incarceration. (Examples of personal relationships include romance, co-habitation, business dealings or provision of legal assistance).
>
> b. Fraternization exposes the employee, other staff, inmates and the public to increased risks of security compromise or danger at the prison and in the community.

(See Def.'s Concise Statement of Material Facts [38] at ¶ 7.)[2]

Based on these facts, Lord filed the instant action, claiming that his federal constitutional rights to freedom of association and privacy were abridged when he was terminated for violating the DOC's anti-fraternization policy.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "A

---

[2] Lord does not dispute that he was familiar with the anti-fraternization policy. In fact, from 2002 until the termination of his employment, Lord had worked as a training coordinator at the Erie County Prison. Among his responsibilities was teaching the policy to new recruits.

disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law," *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir.2009) (citation omitted), and a factual dispute is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 252 (1986). Accordingly, in order for a claim to survive summary judgment, "there must be [significantly probative] evidence on which the jury could reasonably find for the plaintiff." *Id.* For purposes of Rule 56, we assume that the non-moving party's allegations are true and give the non-moving party the benefit of the doubt when those allegations conflict with the moving party's claims. *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir.1995).

### III. DISCUSSION

Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983,[3] which does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To prevail under § 1983, a plaintiff must prove that he suffered the deprivation of a right secured by the United States Constitution or federal law by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995). Here, the only disputed legal issue is whether Lord has produced sufficient evidence to establish the violation of his federal rights.

---

[3] This statute provides a private right of action to:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [U.S.] Constitution and laws.

42 U.S.C. § 1983.

As an initial matter, it is important to clarify the nature of the rights at issue. Lord has challenged Paragraph 27 of the DOC's Standards of Conduct and Code of Ethics stating, in effect, that the County's enforcement of that provision violated his right to freedom of association and privacy as guaranteed by the First and Fifth Amendments to the United Constitution. (Complaint [1-1] at p. 4-5, ¶¶ 9-10.)

As our circuit court of appeals has observed, "Two sometimes overlapping types of [constitutionally] protected association have been recognized: associations founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty, and associations formed for the purpose of engaging in activities protected by the first amendment, such as the exercise of speech, assembly, and religion." *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir.1988) (*citing Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)). Lord's § 1983 claim entails only the first type of protected association -- those "founded on intimate human relationships" where the right to associate is protected as a "fundamental element of liberty." *Id*.

Here, the Magistrate Judge's Report and Recommendation, and the parties' respective responses to it, have focused on the proper constitutional standard of review to be applied to the asserted constitutional right. Lord contends that heightened scrutiny should be applied to the regulation, citing *Via v. Taylor,* 224 F. Supp. 2d 753, 763-64 (D. Del. 2002), as support. The County contends that the applicable standard is the more deferential analytical framework set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which is typically utilized to evaluate the constitutionality of prison regulations. The Magistrate Judge did not believe that a *Turner*-type analysis was appropriate under

these facts because, in her view, the case lacked an appropriate "prisoner nexus" inasmuch as Underhill was not incarcerated at the time of the events giving rise to the County's enforcement of its anti-fraternization policy. The Magistrate Judge further concluded that the record was insufficiently developed such that it precluded an informed analysis under the traditional constitutional principles that apply outside the context of prisoners and prison regulations. More specifically, the Magistrate Judge felt that further record development was necessary in order to evaluate whether Lord's relationship with Underhill was deserving of heightened constitutional protection. Accordingly, she recommended that the County's motion for summary judgment be denied.

However, this line of reasoning begs the question whether any constitutionally protected interest has been asserted in the first place. Unlike the Magistrate Judge, I conclude that the record is sufficiently developed – and undisputed – such that a determination can be made concerning the constitutional significance of Lord's relationship with Underhill. Because I conclude that the relationship is not one that is constitutionally protected to begin with, Lord's § 1983 claim, premised on the alleged infringement of his right to associate with Underhill, cannot survive summary judgment.

Simply stated, the record here establishes that Lord and Underhill were friends. At one time, prior to Underhill's arrest and incarceration, they were also roommates, and Underhill was released into Lord's custody during the pendency of his criminal charges. However, the two men were not living together at the time of the events which gave rise to Lord's termination. Rather, during the relevant time-frame (i.e., after Underhill was released from prison), Lord and Underhill were simply friends who communicated and

socialized with each other.  Nothing more is alleged by Lord or reasonably inferable from this record.[4]  Moreover, this Court is unaware of anything in the record which gives rise to an ambiguity on this point or warrants further factual development.

Although it is not always clear which types of relationships will be considered sufficiently intimate or private as to receive constitutional protection, those that involve "marriage, … the begetting and bearing of children, … child rearing and education, … and cohabitation with relatives" are within the umbrella of protected intimate associations.  *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (citations omitted).  The Supreme Court has stated that "the First Amendment protects those relationships…that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"  *Id*. (*quoting Roberts v. United States Jaycees*, 468 U.S. 609, 619-620 (1984)).  To determine whether an association should be protected, courts consider "factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship."  *Id*.  The Third Circuit has further explained that "[o]nly relationships 'distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship' are likely to implicate protection."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1204-1205 (3d Cir. 1988) (*quoting Roberts*, 468 U.S. at 620).

---

[4] Based on this record, we deem it incontrovertible that Lord and Underhill were not relatives, had never been in business together, and were not intimately involved with each other.  In fact, the record is clear that Underhill had a girlfriend in or around the time that he and Lord became friends, and Lord unequivocally affirmed that there was nothing more to his relationship with Underhill than mere friendship.

Based on these principles, courts have routinely determined that associations based on friendship, even close ones, do not satisfy the type of intimacy warranting constitutional protection. In *Rode v. Dellarciprete, supra*, the Third Circuit Court of Appeals found that the plaintiff's relationship with her co-employee, who also happened to be her brother-in-law and "good friend," was not entitled to constitutional protection where their relationship "was not based on the creation and sustenance of a family." 845 F.2d at 1205. Other lower federal courts within this circuit have followed suit. *See, e.g., Pribula v. Wyoming Area School District*, Civil Action No. 3:06-CV-2039, 2010 WL 1433149 at * 4 (M.D. Pa. April 7, 2010) (granting new trial based on flawed jury instruction which failed to clarify that constitutional right of association did not include purely social friendships; court noted there was "no question that the Plaintiffs' friendship was not protected under the sphere of intimate human relationships"); *Martinez v. Marion*, Civil Action No. 06-05278, 2007 U.S. Dist. LEXIS 44421 (E.D. Pa. June 19, 2007) (concluding that plaintiff's friendship with other individuals was "legally insufficient to be protected by the First Amendment"); *McCusker v. City of Atlantic City*, 959 F. Supp. 669, 672 (D.N.J. 1996) (being fellow police officers and "professional friends" is not an association protected by the First Amendment); *Lutz v. York*, 692 F. Supp. 457, 459 (M.D. Pa. 1988) (concluding that plaintiff's First Amendment challenge to an ordinance that prohibited cruising failed because "[a] random meeting with other cruisers, even those who could be considered friends, is not the type of association protected by the constitution.").

In this regard, Lord's reliance on *Via v. Taylor*, *supra,* is misplaced. In *Via*, the court applied a heightened level of scrutiny to the plaintiff's freedom-of-association and privacy claims after she was terminated because of her off-duty relationship with a paroled former inmate. However, this heightened scrutiny seems to have been premised on the fact that the plaintiff and former inmate were living together in an intimate relationship at the time the relationship was infringed upon. *See* 224 F. Supp. 2d at 760 ("Where, as here, a public employee's right to personal, off-duty, intimate associations has been implicated by a government regulation, courts have applied the intermediate scrutiny standard of review.") (citing cases). No such facts exist here, and *Via* is therefore readily distinguishable from the case at bar.

In sum, the undisputed facts of record show that Lord has failed to establish the violation of any constitutionally protected interest by virtue of his firing. Because Lord has failed to produce evidence from which a trier of fact could conclude that his constitutional rights were violated, his § 1983 claim fails as a matter of law. Summary judgment in favor of the County is therefore warranted.

### IV. CONCLUSION

Accordingly, based upon the foregoing discussion, the following order is entered:

AND NOW, this 8th Day of September, 2011, this Court having undertaken a *de novo* review of the complaint and documents in the case, together with the Report and Recommendations, the Defendant's objections to the R&R, and the Plaintiff's response thereto,

IT IS ORDERED that the Defendant's motion for summary judgment [36] shall be, and hereby is, GRANTED. As to Plaintiff's remaining claims, JUDGMENT is hereby entered in favor of the Defendant, Erie County, and against Plaintiff David K. Lord.

s/ <u>Sean J. McLaughlin</u>
SEAN J. McLAUGHLIN
United States District Judge

cm: All parties of record
U.S. Magistrate Judge Susan Paradise Baxter